IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AKIN AKINKOYE                   :

                                :

   v.                           :   Civil Action No. DKC 11-2336

                                :

WELLS FARGO HOME MORTGAGE,
et al.                          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this diversity case are two motions: a motion to dismiss filed by Defendants (ECF No. 17), and an amended motion for preliminary injunction filed by Plaintiff (ECF No. 9). The relevant issues have been briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, and the motion for preliminary injunction will be denied.

**I.   Background**

   **A.   Factual Background**

The following facts are largely taken or inferred from the complaint. Some of these facts are supplemented with information contained in the attachments to Defendants' motion to dismiss.[1]

---

[1] "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly

In 2004, Plaintiff Akin Akinkoye purchased property ("the Property") located in Gaithersburg, Maryland, which was secured by a Deed of Trust. Akinkoye's wife was the "original mortgagor." (ECF No. 4, at 3). In 2006, Defendant Wells Fargo Home Mortgage ("Wells Fargo") assumed responsibility for servicing the mortgage loan.[2] In July and August 2007, Akinkoye's wife, Olakunle Ogundeji, refinanced the mortgage loan by executing a home equity line of credit for $50,000.00 and a fixed rate note for $400,000.00 along with two corresponding Deeds of Trust ("the Loan").

In 2009, Ogundeji passed away. Around this same time, Akinkoye "began to experience financial hardship . . . and began to struggle to meet his financial obligations." (ECF No. 4, at 2). At some unspecified time after his wife died, Akinkoye requested an "Assumption of Mortgage" from Defendants to take over the Loan, but Defendants failed to process the necessary paperwork. As a result, Akinkoye could not "resume making mortgage payments." (*Id.* at 3).

---

relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

[2] The complaint alleges that Defendant Federal National Mortgage Association ("Fannie Mae") also serviced the mortgage loan. It appears from other allegations, however, that Fannie Mae was either the lender or the holder of the mortgage loan.

2

Akinkoye then requested assistance under the federal Home Affordable Modification Program ("HAMP"). Defendants responded by offering a loan modification. Akinkoye complied with Defendants' requests for documentation to make the loan modification permanent, and he began to make payments under the "Trial Plan." (*Id.* at 4, 10). Defendants, however, lost some of the documents submitted by Akinkoye. They therefore cancelled the loan modification plan.

On January 14, 2010, the substitute trustee for the Loan initiated a foreclosure action on the Property on behalf of Fannie Mae.

**B.   Procedural Background**

On July 25, 2011, Akinkoye filed a complaint against Wells Fargo and Fannie Mae in the Circuit Court for Montgomery County, Maryland. The complaint contains three counts: (1) wrongful denial of a HAMP loan modification; (2) violation of the Maryland Consumer Protection Act ("MCPA"); and (3) constructive fraud. (ECF No. 4).[3]

After service, Defendants timely removed to this court on the basis of diversity of citizenship. (ECF No. 1). The pending amended motion for preliminary injunction (ECF No. 9)

---

[3] The constructive fraud claim is styled as Count Four in the complaint, even though there are only three counts. For consistency, this opinion will also refer to the constructive fraud claim as Count Four.

3

was an open motion that was transferred to this court when the case was removed.[4] Defendants opposed that motion on September 6, 2011. (ECF No. 16). Akinkoye did not reply.

Also on September 6, 2011, Defendants filed the pending motion to dismiss. (ECF No. 17). After Akinkoye failed to respond in a timely manner, on September 30, 2011, the court notified the parties of his delinquency and requested a joint status report. That same day, Akinkoye requested an extension of time, which was granted. Akinkoye finally responded to Defendants' motion on October 6, 2011. (ECF No. 21). On October 19, 2011, Defendants replied. (ECF No. 22). On November 7, 2011, Akinkoye filed a surreply (ECF No. 23), though he failed to request leave to do so as required by Local Rule 105.2. Defendants did not object, however, so Akinkoye's surreply will be accepted for consideration.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule

---

[4] On August 31, 2011, a telephone conference was held during which Akinkoye's counsel stated he would report back to the court by September 6, 2011, as to whether he would request a hearing on the preliminary injunction motion. That date passed without any word from Akinkoye's counsel.

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th

Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Analysis

#### A. Standing

Defendants begin by challenging Akinkoye's standing to bring any of the claims asserted in the complaint. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). An essential component of the "case or controversy" requirement is that "a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the requirement for constitutional standing, a plaintiff must demonstrate that:

> (1) [he] has suffered an "injury in fact"
> that is (a) concrete and particularized and
> (b) actual or imminent, not conjectural or

>hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "[E]ach element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Equal Rights Ctr. v. Equity Residential*, --- F.Supp.2d ---, No. CCB-06-1060, 2011 WL 3022254, at *7 (D.Md. July 22, 2011) (quoting *Lujan*, 504 U.S. at 561). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (alterations in original) (internal quotations omitted) (citing *Lujan*, 504 U.S. at 561).

Here, all of Akinkoye's claims appear to arise out of Defendants' alleged wrongful denial of the HAMP loan modification. Count One is appropriately enough styled as a claim for "Wrongful Denial of HAMP Loan Modification." (ECF No. 4, at 2). Count Two alleges that Defendants made misrepresentations and material omissions regarding their

7

intentions to review Akinkoye's HAMP loan modification application. (*Id.* ¶¶ 35-38). And Count Four alleges that Defendants breached a duty to review fairly Akinkoye's HAMP loan modification application. (*Id.* ¶¶ 42-47). To show standing, therefore, it would seem that Akinkoye's alleged injury must be related to the Loan itself.

In this regard, Defendants assert that Akinkoye "cannot allege that he has suffered damages or that he has any actual legal stake in the matter." (ECF No. 17-1, at 6). Defendants attach the loan documents that form the basis of Akinkoye's claims and point out that "Ms. Ogundeji was the sole owner of the Property and the only obligor under the Note and Deed of Trust." (*Id.*). Akinkoye contests the ownership issue by stating that he obtained full ownership of the Property when his wife died. (ECF No. 21, at 5).[5] He does not contest the fact that he was not an obligor on the Loan documents. Indeed, those documents clearly show only Ogundeji's signature and no others. (ECF Nos. 17-2 to -5).

---

[5] As will be discussed, the ownership of the Property is ultimately of no consequence in resolving the motion to dismiss. Even if it were, however, Akinkoye has not actually included any allegations in the complaint that would suggest that he obtained ownership of the Property. He alleges this fact for the first time in his opposition. (ECF No. 21, at 5). Hence, this fact cannot be considered here. *See Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (holding that facts contained in an opposition to a motion to dismiss but not within the complaint itself cannot be considered).

Akinkoye's inability to allege that he was a party to the Loan documents at first appears to be fatal to his entire case. In *Barone v. Chase Home Finance LLC*, No. CV 11-08016-PCT-FJM, 2011 WL 3665424 (D.Ariz. Aug. 22, 2011), a plaintiff who owned title to a property but who was not a signatory on the note or deed of trust securing the property lacked standing to pursue any claims "aris[ing] out of a refusal to modify the note and deed of trust." *Id.* at *2. Significantly, the *Barone* court was presented with claims of fraud in the inducement, consumer fraud, breach of duty of good faith and fair dealing, and unjust enrichment. The *Barone* court nonetheless looked at the fundamental nature of the claims and focused on the fact that "there [was] no allegation that [the plaintiff] became the obligor or trustor." *Id.* Neither the plaintiff's ownership of the property nor the fact that her claims sounded ostensibly in fraud mattered; because the plaintiff was neither an obligor nor a trustor to the loan, she lacked standing to enforce claims related to a loan modification. *See id.* at *1-2.

Akinkoye actually faces a second hurdle regarding standing: even if he were a signatory to the Loan documents, he likely would still lack standing. Courts across the country have consistently held that borrowers lack standing to bring claims under HAMP. *See Edwards v. Aurora Loan Servs., LLC*, 791 F.Supp.2d 144, 152 (D.D.C. 2011) (collecting cases). Indeed,

9

"Congress did not create a private right of action to enforce the HAMP guidelines." *See Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D.Md. Aug. 4, 2011).

Presumably in recognition of these obstacles, Akinkoye argues that he "does not seek to enforce HAMP directly, but rather seeks to enforce the contracts that promise him a permanent HAMP modification." (ECF No. 21, at 7). In his opposition, Akinkoye refers to a Trial Period Plan ("TPP") under which, in exchange for Akinkoye's compliance with the TPP's terms, Defendants apparently "agreed that the loan modification would become permanent at the end of the three months trial period." (*Id.* at 3). This argument is supported (somewhat tenuously) by the complaint. (*See* ECF No. 4 ¶¶ 17, 45, 46). Defendants counter that a TPP "was never offered to [Akinkoye] or executed by anyone." At this stage of the pleadings, however, Akinkoye's allegations must be accepted as true.[6] Therefore, to the extent Akinkoye's claims arise out of a TPP to which he was a party, Akinkoye may indeed have standing to bring his claims. *See CitiMortgage, Inc.*, 2011 WL 3425665, at *3-4 (holding that a plaintiff who was not a signatory to a promissory note securing a mortgage nevertheless had standing to

---

[6] The court notes, however, that Akinkoye concedes he "is not in possession of the TPP agreement." (ECF No. 21, at 3). Akinkoye offers no explanation for why this is so.

10

bring a claim arising out of a TPP agreement he was alleged to have been a party to); *see also Stovall v. SunTrust Mortg., Inc.*, No. RDB–10–2836, 2011 WL 4402680, at *11 (Sept. 20, 2011) (agreeing that a plaintiff's alleged TPP agreement potentially supports a breach of contract claim).

At most, Akinkoye may have standing to assert claims pursuant to Counts Two and Four because those claims could reasonably be construed as arising from the TPP. The same cannot be said about Count One. Akinkoye attempts to characterize his Count One claim as one in which "[i]t is the contract — not HAMP — that Plaintiff[] seek[s] to enforce" (ECF No. 21, at 7), but this is simply implausible based on the allegations in the complaint. First, Count One itself is styled as "Wrongful Denial of HAMP Loan Modification," not "Breach of Contract." Second, the *ad damnum* clause in Count One strongly suggests that what Akinkoye seeks here is enforcement of HAMP itself. (ECF No. 4 ¶ 28).[7] Because Count One seeks enforcement of HAMP generally, Akinkoye lacks standing to bring this claim. Accordingly, Count One will be dismissed.

---

[7] For example, Akinkoye seeks a declaration "that Defendant[s'] conduct is a violation of [the] Home Affordable Modification Program." (*Id.*).

11

**B.   Count Two:  MCPA**

Defendants argue that even assuming that Akinkoye has standing to bring a claim under the MCPA, he fails to plead that claim with particularity as required by Rule 9(b).  Akinkoye responds that the complaint conforms to Rule 9(b)'s pleading requirements.

"Because the . . . MCPA claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."  *CitiMortgage, Inc.*, 2011 WL 3425665, at *9.  Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Such allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).

In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form.  *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D.Md. 1997)

(recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation" (internal quotations omitted)). A plaintiff who alleges fraud with regard to nondisclosure of a material fact must nonetheless show that the defendant owed a duty of care to the plaintiff. *Id.* ("[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud . . . ."). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Here, even a generous reading of Akinkoye's complaint leads to the conclusion that he has failed to plead a fraud claim under the MCPA with sufficient particularity. At best, the complaint reads:

> 35. The Defendant has committed unfair or deceptive trade practices by: (i) Making a false or misleading oral or written statement(s) or other representation of any kind which had the capacity, tendency, or effect of deceiving or misleading the Plaintiff; and (ii) failing to state a material fact and the failure deceived or tended to deceive the Plaintiffs . . . .
>
> . . . .
>
> 37. Despite meeting all of the eligibility requirements, the Defendant baselessly denied the Plaintiff's loan modification.

>  38. The Defendant's repeated promises to review the loan modification application were a mere ploy to show the appearance of compliance with HAMP, when in reality the Defendant never intended nor complied with HAMP requirements.
>
>  39. The Plaintiff has been damaged by the Defendant's false and misleading statements.
>  . . .

(ECF No. 4 ¶¶ 35, 37-39). This is insufficient under Rule 9(b). Akinkoye fails to allege the bare minimum of facts; there is no indication of the time, place, or content of the alleged misrepresentations. It is also not clear which of the two Defendants is implicated by these allegations. Furthermore, Akinkoye fails to set forth facts supporting his allegation of a material omission on the part of Defendants. Nowhere in the complaint does he identify what information Defendants had a duty to disclose — or that Defendants had a duty to disclose any information at all. Akinkoye has not met the requirements of Rule 9(b), and Count Two must therefore by dismissed.[8]

### C. Count Four: Constructive Fraud

Assuming standing, Defendants contend that although the complaint alleges that Defendants had a "legal and equitable" duty to provide a loan modification to Akinkoye and to conduct a

---

[8] Because Defendants' motion will be granted as to Count Two based on Rule 9(b), their argument regarding preemption need not be addressed at this time.

"fair and accurate review" of Akinkoye's loan modification application (ECF No. 4 ¶¶ 42-43), as a matter of law Defendants did not owe any such duty to Akinkoye under HAMP. Akinkoye does not respond to Defendants' motion as to this final count in either his opposition or his surreply. In their reply, Defendants note Akinkoye's failure to address their argument on this issue. By his failure to address Defendants' arguments in his opposition to the motion to dismiss, Akinkoye has likely abandoned this claim. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 783 (D.Md. 2010) (citing *Mentch v. E. Sav. Bank, FSB*, 949 F.Supp. 1236, 1247 (D.Md. 1997)); *Schalk v. Associated Anesthesiology Practice*, 316 F.Supp.2d 244, 250 n.8 (D.Md. 2004).

Even if Akinkoye did not intend to abandon his constructive fraud claim, Defendants' motion would still be granted on this count. In Maryland, constructive fraud "is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Scheve v. McPherson*, 44 Md.App. 398, 406 (1979) (internal quotations omitted). "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Id.* (internal quotations omitted).

To the extent Akinkoye attempts to maintain a constructive fraud claim by alleging that Defendants owed him a duty of care arising out of the TPP, he must identify a duty separate from that imposed by the putative TPP contract itself. In Maryland, a "contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 654 (1999) (internal quotations omitted); *see also Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC*, 158 F.Supp.2d 631, 642-43 (D.Md. 2001) ("For a fiduciary duty to exist, 'special circumstances over and above any contractual obligations' must exist." (quoting *Parker v. Columbia Bank*, 91 Md.App. 346, 369 (1992)). The bare fact that Akinkoye and Defendants may have been in a borrower/lender relationship does not impose any special tort duty. *See Gephardt v. Mortg. Consultants, Inc.*, No. JFM-10-1537, 2011 WL 531976, at *5 (D.Md. Feb. 8, 2011) ("It is well established under Maryland law that, absent special circumstances, 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature.'" (quoting *Yousef v. Trustbank Sav., F.S.B.*, 81 Md.App. 527, 536 (1990))).[9] In general, "[c]ourts have been

---

[9] In *Parker*, the Court of Special Appeals of Maryland

exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker*, 91 Md.App. at 369.

Here, the complaint does not allege any facts describing special circumstances that would lead to a conclusion that Defendants owed Akinkoye a duty above and beyond what was allegedly agreed upon in the TPP. If Akinkoye believes that a duty of care related to the TPP was breached, he may have a straightforward breach of contract claim. But, as alleged, he does not have a constructive fraud claim. Accordingly, this count will be dismissed.

### D.  Preliminary Injunction

"A preliminary injunction is an extraordinary remedy." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d

---

adopted the reasoning of *Tokarz v. Frontier Federal Savings & Loan Ass'n*, 656 P.2d 1089 (Wash.Ct.App. 1982), which provided examples of special circumstances that would give rise to a fiduciary relationship above and beyond a contract in the context of a residential construction loan. Those examples described situations where the lender "(1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending." *Tokarz*, 656 P.2d at 1094. Here, Akinkoye does not allege any analogous circumstances to support his constructive fraud claim.

17

342, 345 (4th Cir. 2009), *vacated on other grounds by* 130 S.Ct. 2371 (2010), *and reissued in part*, 607 F.3d 355 (4th Cir. 2010). To obtain a preliminary injunction, a plaintiff must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 346 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). All four requirements must be satisfied. *Id.*

Here, in granting Defendants' motion to dismiss, it is apparent that Akinkoye has failed to show that he is likely to succeed on the merits. *See Dickeyville Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, 636 F.Supp. 362, 368 (D.Md. 1986). Therefore, Akinkoye's request for preliminary relief will be denied.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted, and the motion filed by Plaintiff for preliminary injunction will be denied. A separate order will follow.

                                            /s/
                              DEBORAH K. CHASANOW
                              United States District Judge